## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **PREMIER BUSINESS GROUP, LLC** | : | **Case No. 08-CV-01453** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **RED BULL OF NORTH AMERICA, INC.** *et al.* | : | **OPINION & ORDER** |
| **Defendant.** | : | |

Before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant Red Bull of North America, Inc. ("Red Bull") (Doc. 20). The Plaintiff, Premier Business Group, LLC ("Premier"), has filed a brief in opposition (Doc. 22), and Red Bull has filed a brief in reply (Doc. 24). Accordingly, this matter is ripe for adjudication. For the reasons articulated below, Red Bull's motion to dismiss is **GRANTED**.

## I.    BACKGROUND

This dispute relates to an agreement between Premier and nonparty Creative Concepts of America, Inc. ("Creative Concepts"). Premier's allegations are as follows: On March 28, 2006, Premier paid $91,225 to purchase Red Bull products, brand name, know-how, equipment, vending machines, and franchises from Creative Concepts. (Doc. 17 at 4-5). At the time the Premier contract was executed, Creative Concepts had a distribution agreement with Red Bull. (Doc 17 at 4). Andrew Levinson, who represented himself as Andrew Kennedy to Premier, was Creative Concepts' contact person with Premier. (Doc. 17 at 3). During negotiations, he claimed that Creative Concepts

would provide Premier with Red Bull products, vending machines, an exclusive market area, a professional locating service, and Red Bull marketing materials, signs, and posters.  (Doc. 17 at 3).

Prior to paying Creative Concepts and entering into a contract, Premier contacted Red Bull to collect additional information about Creative Concepts.[1]  (Doc. 17 at 7).  Premier alleges that one of its employees spoke with a Red Bull representative who told him or her that Creative Concepts was "reliable, trustworthy, and the sole source of any Red Bull opportunities."  (Doc. 17 at 7-8).  Premier states only that: "To the best of Plaintiff's knowledge, the Red Bull representative was named Beth in a division described as Red Bull Consumer Affairs."  (Doc. 17 at 8).

Premier and Creative Concepts then entered into the purchase agreement on March 28, 2006. (Doc. 17 at 4-5).  Despite having an agreement to do so, Creative Concepts failed to deliver Red Bull machines, product, and marketing materials to Premier, and also did not provide an exclusive market area or professional locating services to Premier.  (Doc. 17 at 11).

The complaint asserts that Red Bull should have warned Premier about Creative Concepts' bad business practices because Red Bull allegedly was aware or should have been aware of several customer complaints raised against Creative Concepts at the time of its conversation with Premier. (Doc. 17 at 10).   These alleged complaints concerned problems with Creative Concepts' "performance, honesty, and bad faith."  (Doc. 17 at 10).

In correspondence dated April 21, 2006, Red Bull notified Premier that it had terminated its relationship with Creative Concepts on April 8, 2006.  (Doc. 17 at 5).  Premier avers that this quick termination further demonstrates that Red Bull knew or should have known about Creative Concepts' problems at the time of Premier's conversation with Red Bull.

---

[1]This allegedly occurred sometime between March 15, 2006 and March 28, 2006.

Based on the above factual allegations, Premier filed suit against Red Bull alleging the following causes of action:

Count I:        Breach of Fiduciary Duty;

Count II:       Fraud and Misrepresentation through Vicarious Liability;

Count III:      Fraud and Misrepresentation;

Count IV:       Negligent Misrepresentation;

Count V:        Deceptive Practices; and

Count VI:       Unjust Enrichment.

These six claims arise under Ohio law.[2]  Red Bull seeks to dismiss all of these claims.

## II.    LAW AND ANALYSIS

### A.    LEGAL STANDARD

The Court may dismiss all or part of a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) is directed solely at the complaint itself.  *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983) (citing *Sims v. Mercy Hospital of Monroe*, 451 F.2d 171, 173 (6th Cir. 1971)).  When evaluating a complaint in light of a motion to dismiss, the Court must accept all of the plaintiff's well-pled allegations as true and resolve every doubt in

---

[2]Premier is an Ohio LLC, while Red Bull is a California corporation.  The basis of this Court's subject matter jurisdiction is diversity of citizenship under 28 U.S.C. §1332.  Accordingly, Ohio law applies to Premier's claims.  For diversity jurisdiction, the citizenship of an LLC is determined by looking to the citizenship of each of its members.  *See Carden v. Arkoma Assoc.*, 494 U.S. 185, 195-196 (1990).  Red Bull never raises this issue nor argues that the Court lacks diversity jurisdiction.  In considering this motion to dismiss, the Court assumes that no member of the Premier LLC is a citizen of California.  Were this case to continue, however, Premier would need to identify the citizenship of its members or certify that none of its members are citizens of California.

-3-

the plaintiff's favor. *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).

That said, a claim will be dismissed when it does not "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory. . . ." *Twombly*, 127 S. Ct. at 1969 (internal citations and quotations omitted, emphasis in original). A court, moreover, is not entitled to accept "legal conclusions" or "conclusory allegations" as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *United States v. Salti*, No. 07-4487, 2009 U.S. App. LEXIS 19093, at *29 n.11 (6th Cir. August 25, 2009) (citing *Iqbal*, 129 S. Ct. at 1951).

Whereas prior to the Supreme Court's decision in *Iqbal*, a district court could disregard only those "allegations . . . sufficiently fantastic to defy reality as we know it," the Supreme Court recently made clear that the bar is meaningfully higher. *Courie v. Alcoa Wheel & Forged Prods.*, No. 07-4440, 2009 U.S. App. LEXIS 18561, at *4-5 (6th Cir. August 18, 2009) (citing *Iqbal*, 129 S. Ct. at 1949; *Iqbal*, 129 S. Ct. at 1959 (Souter, J., dissenting)). To survive a motion to dismiss, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S. Ct. at 1950 (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

-4-

B.     **DISCUSSION**

Red Bull's motion to dismiss challenges the viability of the Plaintiff's claims.  The Court will address each claim in turn.

1.     **Count I:  Breach of Fiduciary Duty**

Premier alleges that Red Bull breached its fiduciary duties when it advised Premier that Creative Concepts was a "reliable" and "trustworthy" company.  (Doc. 17 at 4).  Premier complains that Red Bull described Creative Concepts in these positive terms between March 17, 2006 and March 28, 2006, mere weeks prior to Red Bull terminating its relationship with Creative Concepts on April 8, 2006.  (Doc. 17 at 5).  Premier reasons that, given Red Bull's subsequent termination of its relationship with Creative Concepts, Red Bull knew or should have known that Creative Concepts was not reliable and trustworthy when it made those statements.   By failing to disclose this information, Premier claims that Red Bull breached its fiduciary duty to Premier.  *Id.*

In response, Red Bull states that no fiduciary relationship ever existed between the parties; therefore, no duty could have been breached.  (Doc. 20 at 8).  Red Bull asserts that its interaction with Premier was no more than an ordinary arms-length transaction, with both sides acting in their own best interests.

i.     **Fiduciary Relationship Requirement**

 To prove breach of fiduciary duty under Ohio law, Premier must show the following elements: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom."  *Werthmann v. DONet, Inc.*, 2005 Ohio 3185, *43 (Ohio Ct. App. June 24, 2005) (internal citation omitted).  Red Bull focuses on the first element, asserting that no fiduciary relationship existed between it and Premier.  (Doc. 20 at 8).

Without a fiduciary relationship, Red Bull would owe no duty that could be breached.  *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 554 F. Supp. 2d 821, 826-827 (S.D. Ohio 2008).

The vast majority of business relationships do not give rise to a fiduciary relationship.  *See Blon v. Bank One, Akron, N.A.*, 35 Ohio St. 3d 98, 101 (Ohio 1988).  A "fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."  *Comtide Holdings*, 554 F. Supp. 2d at 826-827 (citing *In re Termination of Employment of Pratt,* 40 Ohio St. 2d 107, 321 N.E.2d 603, 609 (Ohio 1974)).

A party to a business relationship, even when there is a contract, cannot <u>unilaterally</u> elevate a relationship to a fiduciary level.  *Cedar View, Ltd. v. Colpetzer*, 2006 U.S. Dist. LEXIS 7018, at *8 (N.D. Ohio Feb. 24, 2006) ("[B]oth parties must understand that a special trust or confidence has been reposed." (citing *Anchor v. O'Toole,* 94 F.3d 1014, 1024 (6th Cir. 1996))).  No fiduciary relationship is created, moreover, where the parties interact at "arms length, each protecting his own interest."  *Umbaugh Pole Bldg. Co. v. Scott*, 58 Ohio St. 2d 282, 287 (Ohio 1979).  In such a case, it would be unreasonable for either party to expect the other to act as their fiduciary.  *Id.*

In its opposition brief, Premier argues that, because Creative Concepts was the sole supplier of Red Bull products and vending equipment available, Red Bull had a unique position of superiority or influence.  (Doc. 22 at 10)  It contends that Red Bull, therefore, assumed a superior position of trust when advising potential investors about its sole supplier, Creative Concepts.  No other allegations are presented by Premier that would explain why a fiduciary relationship existed between the two parties.

-6-

Premier urges the Court to depart from the normal rule that no fiduciary duty exists between most parties to a business negotiation. It points to a case in which Premier contends that the Ohio Supreme Court elevated a typical arms-length relationship between a bank and a borrower to a fiduciary level during the loan processing stage. *See Stone v. Davis*, 66 Ohio St. 2d 74, 80 (Ohio 1981). It is true, the Court explained, that during the initial stages of the lending process, banks and borrowers "stand at arm's length in negotiating the terms and conditions of a mortgage loan." *Id.* at 79. Once the bank in *Stone* began processing the loan, however, "both sides to the loan transaction must have understood that a special trust or confidence had been reposed in [the bank] to advise and assist" the borrowers through the process. *Id.* at 79. The court in *Stone* further reasoned that "banks do not act as disinterested experts in advising loan customers of the availability of mortgage insurance, but instead have a direct pecuniary interest in inducing the customer to procure it." *Id.* at 80. This led the Ohio Supreme Court to find that banks have a duty to advise customers during loan processing about how to purchase mortgage insurance. *Id.*

*Stone* is not an exception, however, to the general rule that no fiduciary duty is owed in arms-length relationships. *See Irvin v. Am. Gen. Fin., Inc.*, 2005 Ohio 3523, *26 (Ohio Ct. App. June 30, 2005). *Stone* was a lender-borrower situation which had passed the point of an arms-length negotiation into the fiduciary loan processing stage. By contrast, Premier <u>unilaterally</u> placed a superior level of trust in Red Bull's representative. Premier does not allege that any fiduciary relationship between itself and Red Bull was "communicated and agreed upon." *Cedar View*, 2006 U.S. Dist. LEXIS 7018 at *8. "An assumption by one party that a fiduciary duty exists does not fulfill the Ohio Supreme Court's requirement that both parties must understand that a special trust

or confidence has been reposed." *Id.* Because no allegations demonstrate that the parties had a mutual understanding of a fiduciary relationship, the Court finds that no fiduciary duty was owed.

Furthermore, Red Bull was acting in its own best interest when it advised Premier about Creative Concepts.  Taking Premier's allegations as true, Red Bull was advising Premier about Creative Concepts to encourage the purchase of *Red Bull* products and services.  (Doc. 17 at 12). A transaction between Premier and Creative Concepts, then, was potentially beneficial to Red Bull. Therefore, Red Bull was acting in its own best interest, making it unreasonable for Premier to expect Red Bull to act on Premier's behalf as well.  *Accord Umbaugh Pole*, 58 Ohio St. 2d at 287.  No special relationship was created between the parties; this was merely an arms-length business interaction.

Premier has not alleged facts sufficient to show a plausible fiduciary relationship between the parties.  Count I is **DISMISSED**, accordingly.

### 2.    Count II: Fraud and Misrepresentation through Vicarious Liability

Premier claims that Creative Concepts, acting as an agent for Red Bull, made several material misrepresentations.  In specific, Premier claims that Creative Concepts stated that it would provide Red Bull vending machines and products, an exclusive service area, a professional locating service, and Red Bull marketing materials.  (Doc. 17 at 6).  Premier also claims that Creative Concepts' president, Andrew Levinson, misrepresented himself as Andrew Kennedy. *Id.*  Through vicarious liability, Premier seeks to impute this alleged fraud upon Red Bull.

Red Bull counters that (1) Creative Concepts was not its agent, and (2) even if there was an agency relationship, the pleadings fail to state a claim for fraud committed by Creative Concepts. (Doc. 20 at 7).  Red Bull argues that no plausible claim for fraud has been pled because (1) the

purported fraudulent statements related to future events and (2) Creative Concepts' actions amount to nothing more than a breach of contract.  (Doc. 20 at 9).

      i.    **Agency**

"[A]n agency relationship is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Berge v. Columbus Cmty. Cable Access*, 736 N.E.2d 517, 531 (Ohio Ct. App., Franklin County 1999) (internal citation and quotation marks omitted).  There are several theories of agency authority.  Actual agency authority is a "consensual fiduciary relationship between two persons where the agent has the power to bind the principal by his actions, and the principal has the right to control the actions of the agent." *Funk v. Hancock*, 498 N.E.2d 490, 493-494 (Ohio Ct. App., Fayette County 1985).  Ohio also recognizes apparent authority and agency by estoppel. *Agosto v. Leisure World Travel, Inc.*, 36 Ohio App. 2d 213, 216-217 (Ohio Ct. App., Franklin County 1973).  Apparent authority or agency by estoppel exists, if the principal, "by acts or conduct, has caused or permitted another to appear to be his agent, he will be estopped to deny the agency with respect to third persons who deal with the apparent agent in good faith and in the exercise of reasonable prudence." *Id.* (citations omitted).

Red Bull attached its Creative Concepts' contract to its motion to dismiss, intending to use the contractual language to disclaim any agency relationship.[3]  While Premier's motion to strike that

_____

[3]Also before the Court is the Plaintiff's motion to strike an exhibit, or in the alternative, to order an unredacted copy of the exhibit to be released (Doc. 23).  The exhibit at issue is a redacted copy of the contract between Red Bull and Creative Concepts.  Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a <u>pleading</u> any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added).  Because the Plaintiff's motion seeks to strike an exhibit attached to a motion to dismiss, which is not a pleading, its motion to strike must be **<u>DENIED</u>**. *See Tucker v. Potter*, No. 06-CV-2359, 2009 WL 1954773, at *10 (N.D. Ohio July 6, 2009).  With respect to Premier's alternative

exhibit must be denied, the Court is sensitive to Premier's concern that Rule 12(b)(6) motions must be resolved entirely based upon the complaint.  For that reason, the Court has not considered the contract while evaluating the viability of Premier's claims.  Regardless, as Premier points out, the language of such a contract cannot "defeat an agency by apparent authority or by estoppel for the same reasons that 'secret' agreements limiting the authority of an actual agent do not do so." *Id.*

The complaint asserts that Creative Concepts was a distributor of Red Bull products and services, and that a Red Bull representative told Premier that Creative Concepts was the sole source of Red Bull opportunities available.  (Doc. 17 at 4).  The complaint, however, also includes a confirmation letter from Red Bull to Creative Concepts, which was apparently given to Premier by Creative Concepts to support Creative Concepts' claim of a right to sell Red Bull products.  (Doc. 8 at 1).  Notably, that letter specifically states that Red Bull and Creative Concepts had entered into a "buy/sell agreement." *Id.*  Premier's description of its understanding of the Red Bull-Creative Concepts relationship, moreover, is consistent with a traditional "buyer-seller" or distributorship relationship.  As explained below, that type of relationship, without more, does not convert a distributor, such as Creative Concepts, into an agent of a manufacturer, like Red Bull.

Of particular importance, *Bruce v. ICI Ams.*, 933 F. Supp. 781, 789 (S.D. Iowa 1996) emphasized that "[t]he principal's right to control the agent is the primary consideration in determining the existence of an agency relationship."  That court explained that agency is not created merely because a company is an authorized distributor, but that agency is rather a question of

---

motion, because the Defendant's motion to dismiss has been granted on all counts, it is unnecessary for the Court to order the release of the full terms of the exhibit.  Therefore, the motion is **TERMED AS MOOT**.

control.[4]  *Id.* at 790.

Simply put, courts addressing the distributorship agency issue have focused on the level of control exercised by the manufacturer over the distributor.  *See Kibsgard Sports Car Ctr., Inc. v. Great Lakes Car Distribs.*, 1972 U.S. Dist. LEXIS 11738, at *4-5 (N.D. Ohio Oct. 3, 1972) (The plaintiff's failure to offer evidence showing that either one of the two manufacturers "exercised or was capable of exercising any control over defendant's termination of a dealership" was dispositive as to any agency relationship asserted).  Indeed, Ohio courts have held that distributors, in general, do not act as their manufacturer's agent.  *C.f. In re Impact Absorbent Techs.*, 1996 U.S. App. LEXIS 35322, at *7 (6th Cir. Dec. 18, 1996) (unpublished) (Court held that it lacked personal jurisdiction over a manufacturer because the company who marketed and sold the manufacturer's products was not the manufacturer's agent, for purposes of determining jurisdiction).

Premier has failed to plead facts showing that Red Bull had the requisite control over Creative Concepts to create an agency relationship.  Indeed, the facts as pled mandate the contrary conclusion.  In addition to Exhibit 1, reciting the existence of a "buy/sell" relationship, paragraphs 4 and 5 of Premier's amended complaint assert that Red Bull "contracted with Creative Concepts" to distribute its products and that "under contract, Red Bull allowed Creative Concepts to offer the same for sale" to Premier.  (Doc. 17 at 2).  Creative Concepts was merely acting as a distributor of

---

[4]Courts wrestling with this issue have also sought guidance from the Restatement of the Law 2d., Agency §14J (1958), which in pertinent part, states: "[o]ne who receives goods from another for resale to a third person is not thereby the other's agent in the transaction."  *See Curl v. Volkswagen of Am., Inc.*, 114 Ohio St. 3d 266, 273 (Ohio 2007) (holding that a plaintiff could not maintain a suit against a car manufacturer because the car dealer was not the manufacturer's agent and the sale of the vehicle, which had been used as a rental car by the dealership, created no privity of contract); *c.f. Asante Techs. v. PMC-Sierra, Inc.*, 164 F. Supp. 2d 1142, 1148 (N.D. Cal. 2001) (finding that "a distributor of goods for resale is normally not treated as an agent of the manufacturer.").

Red Bull products through a buy/sell agreement, and Premier was fully aware of that fact.  A distributor simply is not a manufacturer's agent absent far more control than alleged here.  Even construing the facts in the light most favorable to Premier, accordingly, the Court finds that the complaint fails to plead a plausible agency relationship, and in fact, asserts facts which disclaim one.[5]

### ii. Fraud

Even if Creative Concepts were Red Bull's agent, Red Bull would still not be liable because Premier has failed to sufficiently plead that Creative Concepts committed fraud and a principal cannot be held vicariously liable for fraud unless their agent committed the tort.[6]  *See Comer v. Risko*, 106 Ohio St. 3d 185, 189 (Ohio 2005).  In this case, Premier's primary claims concern Creative Concepts' statements that it would provide vending machines and products, an exclusive market area, a professional location service, and Red Bull marketing materials.  (Doc. 17 at 6).

Of dispositive relevance, "fraud cannot be predicated upon promises or representations relating to future actions or conduct."  *Tibbs v. Nat'l Homes Constr. Corp.*, 52 Ohio App. 2d 281, 286 (Ohio Ct. App., Warren County 1977).  "Representations as to what will be performed or will take place in the future are regarded as predictions and are not fraudulent. . . ."  *Id.* (citing 24 Ohio Jurisprudence 2d 646, 647, Fraud and Deceit, Section 38).  This is because a "false assertion presupposes that an event has occurred."  *Id.*  Under such circumstances, an actionable fraud claim

---

[5]Premier's failure to assert a contract claim is telling.  If Premier believed Creative Concepts was Red Bull's agent, it surely would have sought to hold Red Bull liable for Creative Concepts' contractual promises; it has not done so.

[6]The elements of fraud are "(1) false representation of a material fact; (2) knowledge of or belief in its falsity by the person making it; (3) belief in its truth by the person to whom it is made; (4) intent that it should be acted upon; and (5) detrimental reliance upon it by the person claiming to have been deceived."  *In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 819 (N.D. Ohio 2004).

may persist only where the party "has no intention of keeping the promise" at the time they made the statement. *Comella v. Comella*, 2008 Ohio 6673, P54 (Ohio Ct. App., Dec. 18, 2008) (citing *Williams v. Edwards*, 129 Ohio App. 3d 116, 124 (1998)).  Furthermore, a fraud claim should be dismissed if the alleged acts are merely a breach of contract because "it is no tort to breach a contract, regardless of motive." *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 1989 U.S. Dist. LEXIS 6726, at *7 (S.D. Ohio Jan. 6, 1989).

As explained above, Premier claims that Creative Concepts fraudulently stated that it would provide vending machines and products, an exclusive market area, a professional location service, and Red Bull marketing materials.  (Doc. 17 at 6).  Each of these purported misrepresentations are simply promises to act in the future, which do not demonstrate plausible claims for fraud.[7]  The complaint, moreover, lacks allegations that Creative Concepts did not intend to deliver the aforementioned products and services at the time they entered the agreement.  Finally, Creative Concepts' promises were all contractual ones, the breach of which are not actionable as fraud.

For the reasons stated above, Count II for Vicarious Liability Fraud is **DISMISSED**.

### 3.    Count III: Fraud and Misrepresentation Against Red Bull

Premier also avers that Red Bull directly committed fraud when it advised Premier that Creative Concepts was a reliable and trustworthy company.  The complaint lists the Red Bull representative who made these alleged fraudulent statements as someone "named Beth in a division described as Red Bull Consumer Affairs." (Doc. 17 at 8).  Red Bull moves to dismiss the claim

---

[7]Premier has also failed to plead a plausible claim for fraud based on the assertion that Andrew Levinson misrepresented himself as Andrew Kennedy.  The pleadings do not present any facts explaining why the use of a different name in this circumstance is a misrepresentation of material fact.  Regardless, Premier's claims for damages are based on Creative Concepts' failure to deliver products and services, which was at most a potential breach of contract.

because the complaint fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).  (Doc. 20 at 14).  Red Bull further asserts that the complaint presents insufficient facts to establish justifiable reliance, including that the "alleged statements that Creative Concepts was 'reliable' and 'trustworthy'" were only statements of opinion.  (Doc. 20 at 16).

### i.  Pleading Fraud with Particularity

Federal Rule of Civil Procedure 9(b) requires "that a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To clarify, the complaint must plead facts, establishing a plausible claim for fraud on all elements, with particularity.  *Id.*; *see also Iqbal*, 129 S. Ct. at 1950.  While the Sixth Circuit has interpreted the particularity requirement liberally, it has said that the plaintiff must at least "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-162 (6th Cir. 1993) (internal citations and quotations omitted).  While these particularity requirements must be considered, the ultimate question is whether the complaint puts the defendant on "sufficient notice of the misrepresentation," enabling them to respond to the allegations of fraud in an informed manner.  *Id.* (quoting *Brewer v. Monsanto Corp.*, 644 F. Supp. 1267, 1273 (M.D. Tenn. 1986)).

The allegations raised regarding the circumstances of the alleged fraud are fairly vague. Premier alleges that, between March 15, 2006 and March 28, 2006, Premier contacted Red Bull, and, to the best of Premier's knowledge, it spoke with a representative "named Beth in a division described as Red Bull Consumer Affairs."  (Doc. 17 at 8).  Premier alleges that Beth stated that Creative Concepts was "reliable, trustworthy, and the sole source of any Red Bull opportunities."  *Id.*  Premier notes that, on April 8, 2006, Red Bull discontinued its relationship with Creative

-14-

Concepts. (Doc. 17 at 9). Because this termination occurred only a few weeks after the conversation in question, Premier avers that Red Bull knew or should have known that Creative Concepts had received numerous customer complaints at the time of the conversation. Premier argues, therefore, that the representations regarding Creative Concepts' reliability and trustworthiness should be deemed as fraudulent. (Doc. 17 at 8).

Premier's complaint merely provides a two-week window during which a person, who Premier thinks was named Beth in a department it thinks was named Consumer Affairs, made the alleged fraudulent statements. These allegations lack particularity because they do not state the specific time and place of the alleged misrepresentations. Furthermore, Premier does not raise any allegations that Beth herself knew of the alleged customer complaints against Creative Concepts. Premier asks the Court to simply infer that "Beth" and Red Bull had a fraudulent intent and scheme based on Red Bull's quick termination of its relationship with Creative Concepts. Based on the Rule 9(b) standard, Premier has failed to plead facts establishing fraud with particularity.

There is simply no way that Red Bull could respond to these allegations in an informed manner. Premier attempts to preserve its claim by pointing to *F & J Roofing Co. v. McGinley & Sons, Inc.*, 35 Ohio App. 3d 16 (Ohio Ct. App., Summit County 1987). In that case, the Ohio Appellate Court, applying the identical language of the Federal and Ohio civil procedure 9(b) rules, determined that, despite a vague set of pleadings, enough detail was contained to leave "no doubt but that [the defendant] knew exactly what matters were involved." *Id.* at 18. Therefore, "a strict application of Civ. R. 9(B) [would] serve no useful purpose." *Id.*

*F & J Roofing* is distinguishable, however. The allegations of fraud asserted in that case are significantly more detailed and specific than the allegations raised by Premier. In *F & J Roofing*, the

-15-

plaintiff and defendant had both submitted competing contractor bids. *Id.* at 16. The plaintiff alleged that the defendant fraudulently created partnerships with individuals who would otherwise be classified as employees, for the purpose of avoiding paying them the federal prevailing wage, as required by federal law and by agreement. *Id.* The details of Premier's complaint, on the other hand, are vague as to the particular conversation, the person involved, and the fraudulent scheme intended. Red Bull could not have received meaningful notice. While Premier is certainly frustrated that its effort to conduct due diligence on Creative Concepts did not provide it with a truer picture of Creative Concepts, the Court finds that Premier's complaint lacks any meaningful specificity, and, therefore, fails to plead fraud with particularity.[8]

### ii.  The Reliance Element of Fraud

Premier's fraud claim must also be dismissed because Premier has failed to plead facts establishing the specific element of reliance with particularity, or even establishing a plausible claim on the reliance element. Premier alleges that Red Bull misrepresented that Creative Concepts was "reliable" and "trustworthy." (Doc. 17 at 7-8). Yet, "[s]tatements of opinion cannot be reasonably relied on and, therefore, cannot form the basis of a fraud claim." *Hayes v. Computer Assocs. Int'l, Inc.*, 2003 U.S. Dist. LEXIS 10712, at *12 (N.D. Ohio June 24, 2003). The Sixth Circuit acknowledged this general proposition in *Operation King's Dream v. Connerly*, 501 F.3d 584, 589 (6th Cir. 2007). While that appeal was dismissed as moot, the Sixth Circuit noted that the District Court had found that there was a "critical difference between puffing and fraud [because] in the latter situation, the recipient of false information is in a position to <u>reasonably rely</u> on the assurances of the speaker." *Id.* (emphasis added).

---

[8] As *F & J Roofing* correctly explains, the "nature of each individual case will necessarily determine the degree of specificity which under Rule 9(b) is appropriate." *Id.* at 17.

In the analogous case, *Hayes v. Computer Assocs.*, the defendant company's vice president of sales, Christopher Hawkins, induced the plaintiff to join the company as a sales representative. 2003 U.S. Dist. LEXIS 10712 at *2-4.  The defendant subsequently fired the plaintiff based on deficiencies in his sales performance, which gave rise to the litigation.  In his complaint, the plaintiff asserted that Hawkins fraudulently induced him to join the sales team by selling him on the quality of the company's upcoming products and its reputation.  *Id.* at *9.  The Court, however, found that "any statements Hawkins made about how the new software would positively impact sales or [the company's] alleged reputation in the software market were merely his opinions."  *Id.* at *12.  The claim was, therefore, dismissed.[9]  *Id.*

Many other courts have held that statements of opinion or puffery cannot justifiably be relied upon to form the basis of a fraud claim.  *See Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 134 (2d Cir. 2008) ("statements of opinion generally cannot constitute fraud."); *c.f. Avery v. Joint Twp. Dist. Mem'l Hosp.*, 286 Fed. Appx. 256, 267 (6th Cir. 2008) (unpublished) ("Ohio courts have determined that a representation of law amounts to an opinion and therefore cannot form the basis for a fraud claim unless there is a fiduciary relationship between the parties."); *c.f. Miller's Bottled Gas v. Borg-Warner Corp.*, 955 F.2d 1043, 1051 (6th Cir. 1992) ("A mere statement of opinion or prediction may not be the basis of an action.").

In the case at bar, Premier allegedly relied on Red Bull's statements that Creative Concepts was a reliable and trustworthy company before executing an agreement with Creative Concepts.  Similar to *Hayes*, those words "reliable and trustworthy" were merely an opinion of Creative

---

[9]In *Hayes*, the court deemed statements of opinion by a Vice-President of the company as insufficient.  In comparison to the current case, Premier is alleging justifiable reliance based solely on statements of opinion by "Beth."

-17-

Concepts' reputation, and therefore, cannot justifiably be relied upon by Premier.[10]  Accordingly, Premier has failed to plead the reliance element.

For the foregoing reasons, Count III for Fraud and Misrepresentation is **<u>DISMISSED</u>**.

### 4.    Count IV: Negligent Misrepresentation

Premier alleges that Red Bull negligently misrepresented that Creative Concepts was a reliable and trustworthy company, despite knowing Creative Concepts' history of customer complaints concerning "performance, honesty, and bad faith."  (Doc. 17 at 10).  Red Bull responds that it cannot be found liable because: (1) it is not in the business of supplying information; (2) it had no special relationship with Premier; and (3) the "economic loss" rule precludes any recovery by Premier. (Doc. 20 at 15-16).  In response, Premier counters that negligent misrepresentation remains a viable claim because Red Bull had a  pecuniary interest in any potential contract between Premier and Creative Concepts to distribute Red Bull products and services.  (Doc. 22 at 17).

A company can, in some circumstances, be held liable for negligently supplying information.

Under Ohio law:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 4, 534 N.E.2d 835, 838 (Ohio 1989) (citing Restatement (Second) of Torts § 552(1) at 126-127 (1965) (additional citation omitted)).  Of

---

[10]In regards to pleading <u>justifiable</u> reliance, Premier's complaint does not assert that it made any further attempts to confirm these opinions - for example, by checking with the Better Business Bureau or Creative Concepts' other vendees.  Even in a Rule 12(b)(6) setting, the Court finds it difficult to deem as justified any reliance based solely on Beth's opinions, absent any other confirmatory action.

particular relevance here, "[t]he elements for negligent misrepresentation clearly require (1) a defendant who is in the business of supplying information; and (2) a plaintiff who sought guidance with respect to his business transactions from the defendant." *Nichols v. Ryder Truck Rental, Inc.*, 1994 Ohio App. LEXIS 2697, at *11 (Ohio Ct. App. June 23, 1994), *appeal not allowed*, 642 N.E.2d 386 (Ohio 1994).

In short, negligent misrepresentation requires "a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transactions." *Picker Int'l v. Mayo Found.*, 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998).  The *Picker* court explained how this type of relationship might arise and emphasized that an ordinary contractual relationship was not enough.  *Id.* at 689.  "Usually the defendant is a professional (e.g., an accountant) who is in the business of rendering opinions to others for their use in guiding their business. . . ." *Id.* (citing *Haddon View Inv. Co. v. Coopers & Lybrand*, 70 Ohio St. 2d 154, 157, 436 N.E.2d 212 (1982)).  Other professions traditionally fitting the definition include attorneys, surveyors, inspectors of goods, and abstractors of title.  *See McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgmt.*, 87 Ohio App. 3d 613, 631 (Ohio Ct. App., Cuyahoga County 1993).

Premier's complaint does not include allegations indicating that Red Bull was in the business of supplying information to guide others in their businesses.  While Red Bull allegedly supplied Premier with information about Creative Concepts, the mere act of supplying information in itself is not sufficient to give rise to a negligent misrepresentation claim.  Indeed, countless companies supply information in the ordinary course of business.  To sustain a negligent misrepresentation claim, however, something more - a special relationship - is required.  This relationship is similar, but not identical, to a fiduciary relationship, as explained in Section 1 above.  The classic example

-19-

is a client placing his or her trust in an attorney or accountant.  *Picker*, 6 F. Supp. 2d at 689; *McCarthy*, 87 Ohio App. 3d at 631.

No matter how liberally the Court reads Premier's complaint, it is clear that it does not contain the allegation that Red Bull was acting in any such role.  Even if it did contain such an assertion, moreover, this still might not have been enough under *Bell Atlantic* and *Iqbal*.  Red Bull, after all, is in the business of selling energy drinks, not in the business of supplying information about other companies' reputation and business practices.  As explained in Section 1, Premier has alleged an ordinary business transaction, and nothing more.  No special relationship was ever formed between the parties based on the conversation Premier had with Red Bull's representative.[11]  Therefore, Count IV for Negligent Misrepresentation must be **DISMISSED**.[12]

---

[11]The weakness of Premier's assertion of a special relationship is further demonstrated by the mere fact that it attempts to base this purported "special" relationship on a conversation with someone Premier cannot definitely identify.

[12]Red Bull's "economic loss rule" defense should also be addressed.  The rule states "that a party cannot bring a cause of action in tort (such as negligent misrepresentation) for economic losses."  *Picker*, 6 F. Supp. 2d at 688-689 (citations omitted).  Without privity of contract, "the general rule is 'there is no duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things.'"  *Floor Craft Floor Covering, Inc. v. Parma Cmty. General Hosp. Ass'n*, 54 Ohio St. 3d 1, 3 (Ohio 1990) (citing Prosser & Keeton, Law of Torts 657 §92 (5th Ed. 1984).

Premier relies heavily on *McCarthy*, which states that *Floor Craft*'s adoption of the economic loss rule does not necessarily preclude recovery when a plaintiff suffers pecuniary loss due to "negligent misrepresentations made by those who have a <u>pecuniary</u> interest in a transaction."  *McCarthy*, 87 Ohio App. 3d at 631 (citing Restatement (Second) of Torts §552) (emphasis added).  Premier's opposition brief focuses on *McCarthy*'s discussion of how other jurisdictions apply the economic loss rule.  (Doc. 22 at 22).  This focus, however, fails to recognize that the holding in *McCarthy* is based on the Section 552 "pecuniary interest" prong, and not on other jurisdictions' application of the rule.  *Id.* at 634.

Because one could infer that Red Bull had a pecuniary interest in the Premier-Creative Concepts transaction, based on *McCarthy*, it would be potentially liable for economic losses.  This Court, however, finds it unnecessary to reach a conclusion on the economic loss rule because Premier's claim must be dismissed on alternative grounds.  Premier's failure to allege (1) that Red Bull is in the business of supplying information or (2) that Red Bull and Premier had

-20-

5.      **Count V: Deceptive Practices**

The complaint alleges that Red Bull is liable for deceptive practices because it allowed Creative Concepts to use the Red Bull name and sell Red Bull products, despite knowledge that the company had received numerous customer complaints. (Doc. 17 at 10).  Premier supports its argument by reiterating both Red Bull's and Creative Concepts' failure to provide the products and services addressed in the Premier agreement. (Doc. 17 at 11).  In response, Red Bull points to Ohio Revised Code §4165.02 on Deceptive Trade Practices, and it argues that the pleadings fail to show a plausible claim because none of the alleged conduct is prohibited by the statute. (Doc. 20 at 17-18).  Red Bull also counters that the purported deceptive practices are nothing more than an alleged breach of contract. (Doc. 20 at 19).  In response, Premier states that Red Bull placed the "means and instrumentalities" to deceive the public into the hands of Creative Concepts when it distributed Red Bull products through Creative Concepts, a company it allegedly knew had many complaints raised against it. (Doc. 22 at 19).

Premier's complaint and briefing on this issue ask the court to essentially fit a square peg into a round hole.  Premier provides no Ohio law giving it a cause of action for deceptive practices based on its factual allegations.[13]  Instead, Premier relies exclusively upon *Waltham Watch Co. v. Fed. Trade Com.*, 318 F.2d 28 (7th Cir. 1963).  That Seventh Circuit case appears to have considered a different statute, however, and is factually distinct in any event.  In *Waltham Watch*, the plaintiff alleged that the defendant allowed franchisees to use false advertising.  In particular, the plaintiff claimed that the advertisements misled the public into believing that the clocks being sold were

_____

a special relationship requires the Court to dismiss its negligent misrepresentation claim.

[13]In fact, Premier never mentions O.R.C. §4165.02 in its complaint or its briefing.

-21-

affiliated with the world famous original Waltham Watch Company, when in fact, "that company had nothing to do with the proposed sale of Waltham clocks." *Id.* at 31.

In contrast to the plaintiff in *Waltham Watch*, Premier alleges no deception or confusion regarding the actual products and services that it purchased.  It merely alleges that "[n]either Red Bull nor Creative Concepts provided the products, brand name . . . and benefits defined in the purchase agreement." (Doc. 17 at 11).  Those are, as previously explained, allegations of breach of contract.  Because "it is no tort to breach a contract," Premier's allegations fail to present a plausible claim for deceptive practices.  *Enter. Energy Corp.*, 1989 U.S. Dist. LEXIS 6726, at *7.

The only allegation approaching a plausible deceptive practices claim is that Red Bull's representative allegedly told Premier that Creative Concepts was "reliable and trustworthy."  On that allegation, Red Bull is correct to acknowledge that Premier's only potential claim would arise under the Ohio Deceptive Trade Practices Act.  O.R.C. §4165.02 (2009).  Yet, Premier makes no attempt in its complaint or opposition brief, to raise any statutory claim under that Act, or to allege the factual predicates necessary to demonstrate a violation of it.  The Court will not read a statutory claim into Premier's complaint that is not present there.[14]

Accordingly, Count V for Deceptive Practices is **DISMISSED**.

6.      **Count VI: Unjust Enrichment**

Premier alleges that Red Bull was unjustly enriched by Premier's agreement with Creative Concepts.  (Doc. 17 at 12).  It claims that Red Bull accepted the "benefit of distribution and marketing" of Red Bull products and services.  *Id.*  Red Bull counters that the complaint fails to

---

[14]For the aforementioned reasons, the Court need not consider whether Premier's complaint alleges conduct which is plausibly prohibited by the Act.

plead any benefit conferred on Red Bull that has been unjustly retained.  (Doc. 20 at 21).  It also argues that, if any benefit was conferred, the pleadings do not show how it would be inequitable for Red Bull to retain it.  (Doc. 20 at 21).  Premier's main rebuttal is that a reasonable inference can be drawn that the money paid to Creative Concepts would eventually reach Red Bull.  (Doc. 22 at 23).

Unjust enrichment serves the purpose of preventing injustice.  *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 502 (6th Cir. 2003) (internal citation omitted).  A claim for unjust enrichment is based on quasi-contract and requires the following: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment."  *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183 (Ohio 1984).  Not only must the plaintiff show that the defendant has received a benefit, but he or she must also "show a superior equity so that it would be unconscionable for the defendant to retain the benefit."  *DavCo. Acquisition Holding, Inc. v. Wendy's Int'l, Inc.*, 2008 U.S. Dist. LEXIS 27108, at *31 (S.D. Ohio Mar. 18, 2008) (citing *City of Cincinnati v. Fox*, 71 Ohio App. 233, 239, 49 N.E.2d 69 (1943)).

As Premier highlights, a claim for unjust enrichment can arise from a "passively received" benefit, if its retention would be unconscionable.  *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 861 (6th Cir. 2002).  Premier's complaint, however, lacks sufficient factual allegations to show that Red Bull received any benefit from Creative Concepts' relationship with Premier.  The Court adduces that the only <u>arguable</u> benefits involved are (1) that more Red Bull products and its brand name would reach the marketplace and (2) that Red Bull may have indirectly received some portion of Premier's payment to Creative Concepts.  Neither of these claims, however, have been sufficiently pled.

-23-

As an initial matter, the very basis of this cause of action is that Red Bull products and services were, in fact, not delivered.  Therefore, the pleadings' assertion that Red Bull "accepted a benefit of distribution" is inherently contradictory.  If anything, Red Bull was harmed by Creative Concepts' failure to deliver products to Premier because that prevented Red Bull products from reaching the market.

Premier, as well, does not allege that it made any payment to Red Bull, or that Creative Concepts paid Red Bull anything out of funds transferred to it by Premier.  Premier's sole allegation is that its "purchase order was a direct benefit and enrichment to Red Bull" (Doc. 17 at 12), and it urges the Court to infer that money paid to Creative Concepts may have reached Red Bull.  (Doc. 22 at 23).  The fault in Premier's reasoning, however, is that it, again, ignores the contractual relationship between the parties.  Any  payment from Creative Concepts to Red Bull would have been pursuant to its own contract with Red Bull, a contract which authorized Creative Concepts to buy and resell Red Bull products.  If Creative Concepts, in fact, purchased products from Red Bull, Red Bull would not be unjustly enriched by fair payment for those products, whether or not Creative Concepts ever delivered those goods to Premier.  Beyond that, Red Bull was, if anything, harmed by Creative Concepts' breach of its agreement with Premier because Red Bull lost the opportunity to provide a flow of products to Premier.  Hence, the only arguable minimal benefit to Red Bull would be one it was justified to retain.

For these reasons, Count VI for Unjust Enrichment is **DISMISSED**.

## III.  **CONCLUSION**

Defendant Red Bull of North America, Inc's Motion to Dismiss (Doc. 20), as explained above, is **GRANTED as to all counts**.  Further, Plaintiff Premier's Motion to Strike an Exhibit

(Doc. 23) is **DENIED**, and its alternative motion for an unredacted copy of the exhibit (Doc. 23) is

**TERMED AS MOOT**.  Accordingly, this case is **DISMISSED**.


      **IT IS SO ORDERED.**

                            **s/Kathleen M. O'Malley**
                            **KATHLEEN McDONALD O'MALLEY**
                            **UNITED STATES DISTRICT JUDGE**


**Dated: September 30, 2009**